Rockingham
No. 87-409

JUNE M. EATON & a.

v.

JEAN M. RIVARD

November 4, 1988

*Mary Keohan Ganz*, of Seabrook, by brief and orally, for the plaintiffs, June M. and Donald A. Eaton, and Doreen A. and Paul W. Welch.

*Salomon & Nebling*, of Hampton (*Craig N. Salomon* on the brief and orally), for the defendant.

BATCHELDER, J. This appeal arises out of a dispute over a twenty-foot-wide right-of-way extending from River Street in Seabrook to Hampton Harbor. The plaintiffs, the Eatons and the Welches, own property on the southerly side of River Street. The defendant, Jean Rivard, owns a waterfront lot over which the plaintiffs claim an easement to Hampton Harbor, along the southerly line of Rivard's property. The plaintiffs acquired title to their property by deeds dated May 6, 1963, in the case of the Eatons, and July 7, 1980, in the case of the Welches. The plaintiffs'

deeds did not purport to convey any appurtenances, rights or easements. The deeds merely describe the perimeter boundaries of the respective plots of land on River Street. The defendant's title is derived from a deed recorded June 7, 1977, and containing the following reservation:

> "This conveyance is subject to the reservation of a right of way 20 feet wide on the easterly end of said lot next to said Chase's Lot to be kept open and in common for the use of the proprietors of the beach forever."

The quoted language first appeared in a deed from Richard Fowler to Herbert Parker in August, 1893, and has appeared in every deed in defendant's chain of title since that time.

Over a period of time, Rivard blocked the area of the easement by placing obstructions consisting of cement blocks and other material calculated to prevent access to the beach over the claimed right-of-way from River Street. The plaintiffs instituted this action as a petition for a permanent injunction, and were awarded relief by an order of the trial court which enjoined the defendant from obstructing the right-of-way. The Trial Court (*Gray*, J.) determined the case upon an agreed statement of facts supported by a number of exhibits.

The court found that "[t]he records of the Town of Seabrook indicate that the general public within the Town of Seabrook and individual owners have replaced original 'proprietors of the beach.'" The court also found that the public has used the access way continuously for over twenty years and ruled that the restrictions in the Rivard deed constituted a covenant intended to benefit the plaintiffs and to run with the land. The court also ruled that the right-of-way could be characterized as an easement which was originally conveyed in writing and was not extinguishable. The court finally found that the defendant's conduct resulted in a benefit to him at the plaintiffs' expense and that he had unjustly benefited by his conduct.

A defendant, thus put down, does not have strong jurisprudential winds blowing at his back when he embarks upon an appeal. However, the agreed statement of facts in this case is sparse and makes no mention of the origins of the plaintiffs' titles prior to the dates of their deeds, thus drastically limiting the scope of the fact-finding available to the trial court.

The principal issue in this case is to determine for whose benefit the right-of-way exists. To make this determination favorable to the plaintiffs, the phrase "proprietors of the beach" had to be interpreted to include them. The trial court found that the records

of the town of Seabrook indicated that the general public within Seabrook and the plaintiffs had replaced the original proprietors of the beach. The court also found that the land had been partitioned to individuals and the town. The agreed facts do not support this legal conclusion.

Proprietary or common lands date back to the settlement of New Hampshire in the seventeenth century. They were created by a grant of a township or large tract of land to a group of individuals or proprietors. *Proprietors of Cornish v. Kenrick*, N.H. (Smith) 270, 271 (1809). The proprietors held the land in common until, by vote of a majority of them, they partitioned it, developed it, or otherwise disposed of it. Even then, however, the proprietary could retain some control over the governance of such lands. *Id.* at 272. The incorporation of the proprietary into a town did not cause title to the common lands to change from the proprietary to the town, unless the act of incorporation specifically provided for such a change. *South Hampton v. Fowler*, 52 N.H. 225, 228–29 (1872); *cf. Town of Hampton v. Palmer*, 102 N.H. 127, 129–30, 153 A.2d 796, 798 (1959) (title to lands in town vested in town as legal entity).

The defendant's main contention on appeal is that the plaintiffs did not present adequate evidence for the trial court to determine that the plaintiffs now stand in the place of the original proprietors of the beach. The plaintiffs' deeds make no reference to the right-of-way, and the plaintiffs provided no evidence that their chains of title could be traced back to the title of Richard Fowler, the original owner of the land subject to the right-of-way, or any other proprietor of the beach. Instead, the plaintiffs rely on the absence of records concerning proprietary lands in the offices of the town of Seabrook and the Secretary of State, the two places in which RSA 303:21 and :23, respectively, require certain proprietary records to be kept. The plaintiffs argue that because no records of a Seabrook proprietary exist, the deed's phrase "proprietors of the beach" must refer to property owners near or "of" the beach, not to proprietors as that term was used in an historical context.

The area encompassing this property has been the subject of four decisions by this court in the 1800's, all of which involved Richard Fowler, the original owner of the land in dispute in this case. *Seabrook v. Fowler*, 67 N.H. 428, 30 A. 414 (1893); *Fowler v. Beckman*, 66 N.H. 424, 30 A. 1117 (1891); *South Hampton v. Fowler*, 54 N.H. 197 (1874); *South Hampton v. Fowler*, 52 N.H. 225 (1872). In each case, Fowler successfully defended his title against various claimants, including the town of Seabrook.

The facts supplied and the agreed statement do not support the conclusion that there was either an expressed or an implied grant of some kind to the plaintiffs' predecessors. The statement is equally devoid of an expression of factors which might lead one to conclude that there was an adverse or prescriptive right which might inure to the plaintiffs' benefit. *Cf. Elmer v. Rodgers,* 106 N.H. 512, 214 A.2d 750 (1965). There being no proof that these plaintiffs stand in the shoes of the "proprietors," the judgment must be reversed.

*Reversed.*

All concurred.